[No. 9060.  Department Two.  October 27, 1910.]

ARTHUR E. FENTON *et al.*, *Respondents*, v. CASCADE MUTUAL
FIRE ASSOCIATION OF WASHINGTON, *Appellant*.[1]

INSURANCE—NONPAYMENT OF PREMIUM—NOTICE TO MORTGAGEE.  A policy of fire insurance, issued and delivered without prepayment of the premium, is an executed contract, and the presumption is that credit was given and the time for paying the premium extended, and if payable to a mortgagee, it cannot be forfeited without notice to the mortgagee and demand.

. INSURANCE—CHANGE OF OWNERSHIP—INCUMBRANCE.  Where a policy of fire insurance was made payable to a specified mortgagee, "as interest may appear," the giving of a second mortgage to the same

[1]Reported in 111 Pac. 343.

mortgagee to secure a further loan is not a breach of the conditions against change of ownership, increase of hazard or subsequent incumbrance, the policy meaning "as interest may appear" at the time of the loss.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered February 25, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on a policy of fire insurance. Affirmed.

*Govnor Teats, Hugo Metzler,* and *Leo Teats,* for appellant, cited: *Connecticut Fire Ins. Co. v. Manning* 160 Fed. 382; *Milwaukee Mechanics' Ins. Co. v. Niewedde,* 12 Ind. App. 145, 39 N. E. 757; *Koshland v. Home Mut. Ins. Co.,* 31 Ore. 321, 49 Pac. 864, 50 Pac. 567; *Atlas Reduction Co. v. New Zealand Ins. Co.,* 138 Fed. 497, 9 L. R. A. (N. S.) 433; *Bowlus v. Phenix Ins. Co.,* 133 Ind. 106, 32 N. E. 319, 20 L. R. A. 400; *Johansen v. Home Fire Ins. Co.,* 54 Neb. 548, 74 N. W. 866.

*C. E. Stevens* and *H. T. Granger,* for respondents.

DUNBAR, J.—The following brief statement, we think, will be sufficient for the determination of the questions involved, without mentioning some details set forth in the statement of counsel. The respondents owned a house in the city of Tacoma, and mortgaged the same, with the land on which it was built, to one Bertha L. Leigh, for the sum of $750. The respondents had the property insured by appellant, on July 17, 1908, for the sum of $750. The business was done through C. L. Johnson, an agent of Bertha L. Leigh. Johnson informed the appellant company of the fact that Mrs. Leigh had a mortgage on the property in the sum of $750, and the company attached a rider containing a mortgage clause in the following words:

"Loss or damage, if any, under this certificate shall be payable to Bertha L. Leigh of the city of Tacoma, State of Washington, mortgagee (or trustee) as interest may appear."

On November 25, 1908, Fenton borrowed an additional $250 from Mrs. Leigh, and gave another and second mortgage to cover such sum. On May 2, 1909, the property in question was completely and totally destroyed by fire, and plaintiffs thereupon for the first time were notified by the insurance company that the premium had not been paid. The plaintiffs then tendered the amount due, which was refused, and suit was brought for the amount due on the policy. Trial was had, which resulted in a verdict for plaintiffs as prayed. Findings of fact were made and conclusions of law followed, and judgment was entered for the plaintiffs in the sum of $750, less the amount of the premium which had been tendered.

There are some exceptions taken to the findings of fact, but an examination of the record satisfies us that they are borne out by the testimony. There are two propositions relied upon by the appellant in this case: (1) Nonpayment of the premium prior to the loss; and (2) that the giving of the second mortgage avoided the policy. In relation to the first proposition, the testimony shows that it was simply a misunderstanding that prevented the payment of the premium; that the respondents thought the premium was paid, until the loss occurred, and had not been notified to the contrary by the appellant, and that no demand had ever been made upon him for the payment of the premium. The policy had been issued and delivered in accordance with the application. Under all authority it then became an executed contract, and under such circumstances, the presumption attaches that credit is given and time for payment extended. 19 Cyc. 606, and cases cited.

As to the second proposition, stripped of any modification in the contract, the giving of the second mortgage would probably render the policy void under the provisions of the contract that the mortgagee should notify the association of any change of ownership or increase of hazard, etc. But, as is well contended by the respondents, this and kindred

provisions are modified and limited by the further provision in the contract that the loss and damage under the contract should be paid to Bertha L. Leigh, mortgagee, as interest may appear, the appellant having been notified at the time the policy was issued that Bertha L. Leigh was mortgagee in the sum of $750. There also appears in the contract the following:

"If with the consent of this association an interest under this certificate shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of the insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon and attached or appended hereto."

The contention of the appellant is that the giving of the second mortgage to Bertha L. Leigh violates the provisions against subsequent incumbrance. But in view of the provision quoted above, the determination of the whole question rests upon the meaning of the phrase "as interest may appear," the contention of the appellant in that regard being that it should be construed to mean, as her interest appeared at the time the policy was issued. This, we think, is not the proper construction. It should be construed to mean such interest as by proper proofs is shown to appear at the time of the loss.

Nor do we think the authorities cited by appellant sustain its contention in a case of this kind. As pointed out by respondents, the case of *Atlas Reduction Co. v. New Zealand Ins. Co.*, 138 Fed. 497, cited by appellant in discussing this particular question, announces a rule exactly opposed to the contention of the appellant. In referring to the contention of plaintiff's counsel in that case, the court said:

"Doubtless this would be a proper interpretation of the words 'as their interest may appear,' if they stood alone or were controlling. They are plainly prospective, and refer, not to an interest existing at the time when the indorsement

was written, but to such interest as may appear at the time of
the loss, if any, without regard to the character of the in-
terest, or the time it may have arisen.".

In this case the words do stand alone, so far as any inter-
pretation of their meaning is concerned. The case quoted was
decided against the insured, but because there was a plain vio-
lation of a distinct and unqualified provision. And so with
the other cases cited.

The judgment is affirmed.

RUDKIN, C. J., CHADWICK, CROW, and MORRIS, JJ., concur.