[No. 20772. Department One. November 10, 1927.]

ELEANOR M. VOGEL, *Respondent,* v. EQUITABLE LIFE
ASSURANCE SOCIETY, *Appellant.*[1]

[1] INSURANCE (54, 99)—PREMIUMS—EFFECT OF FAILURE TO PAY—
EXTENSION OF TIME—CREDIT—WAIVER. The right of a life insur-
ance company to have its policy regarded as ineffective for
failure to pay the first premium, presumably due on delivery of
the policy, is waived by extending credit therefor; and delivery
of the policy without demand for payment raises the presump-
tion that credit was extended.

[2] SAME (54, 99). Such credit and waiver is also evidenced by
demand for a subsequent premium installment, after the right
of forfeiture had accrued for default in paying the first pre-
mium.

[3] SAME (100) — PREMIUMS — PAYMENT — EXTENSION OF TIME BY
AGENT—APPARENT AUTHORITY. The jury is warranted in finding
that a life insurance agent had apparent authority to give credit
for, and waive payment of, the first premium at the beginning
of the term, where he was intrusted with the policy for delivery,
later sent his check for the amount, and the company thereafter
made demand for the second installment, without having made
demand for the first payment.

Appeal from a judgment of the superior court for
Pierce county, Remann, J., entered April 23, 1927, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action upon a life insurance policy. Affirmed.

*Kerr, McCord & Ivey* and *Wm. Z. Kerr,* for appel-
lant.

*G. P. Fishburne,* for respondent.

PARKER, J.—The plaintiff, Mrs. Vogel, commenced
this action in the superior court for Pierce county,
seeking recovery from the defendant assurance society
upon a policy of insurance, issued by it upon the life
of her deceased husband. Trial in that court, sitting

[1]Reported in 261 Pac. 106.

with a jury, resulted in verdict and judgment awarding to the plaintiff recovery, from which the defendant has appealed to this court.

The controlling facts, as we think the jury were well warranted in finding, and manifestly did find them, may be summarized as follows: At all times here in question, P. H. Walbridge was a duly authorized soliciting agent of appellant society. On December 21, 1921, Walbridge secured from Vogel a written application for life insurance, reading in part as follows:

"To the Equitable Life Assurance Society of the United States.

"I hereby apply for a policy on my life for $1,000.00 for the benefit of Eleanor M. Vogel, wife, . . . The policy to be on the Preliminary Term 6 months plan, with Premiums of $9.28 payable 6 mo. term annually in advance . . . I agree that the policy issued hereon shall not take effect until the first premium has been paid during my good health; that no agent except the President, a Vice-President, the Secretary, the Treasurer, or a Registrar of the Society has power to make or modify any contract on behalf of the Society or to waive any of the Society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers . . . I have paid to P. H. Walbridge $9.28 to cover the first 6 mo. annual premium on the policy applied for, in accordance with the provisions of the receipt of date and number corresponding to this application, which I hereby accept and agree to the conditions thereof. Dated at Kapowsin, Wash., Dec. 21, 1921. (Signed) John Leo Vogel,

"Special Instructions.

"At expiration of this policy a Convertible with Dis. & Doubl-Ind. Acc. With quarterly Premium.
                    "(Signed) John Leo Vogel."

This application was manifestly treated by both Vogel and appellant as an application for two insurance policies, one a preliminary term policy for a period of six months, and the other a so-called regular

policy to become effective at the end of the six months'
preliminary term policy. This will be rendered plain
as we proceed, though it may not seem plain from the
language of the application above quoted. On the same
day, Walbridge signed and delivered to Vogel, mani-
festly in pursuance of his authority so to do, a receipt
reading as follows:

"Received of John Leo Vogel Nine 28/Dollars, the
first 6 mo. term annual premium on proposed insur-
ance for $1000.00 on the life of John Leo Vogel, for
which an application bearing a corresponding number
as above is this day made to The Equitable Life As-
surance Society of the United States. Insurance sub-
ject to the terms and conditions of the policy contract
shall take effect as of the date of this receipt, provided
the applicant is on this date in the opinion of the
Society's authorized officers in New York, an insurable
risk under its rules and the application is otherwise
acceptable on the plan and for the amount and at the
rate of premium applied for; otherwise the payment
evidenced by this receipt shall be returned on demand
and the surrender of this receipt.
    "Dated at Kapowsin, Wn., Dec. 21, 1921.
                    "P. H. Walbridge, Agent."

This purported payment of the preliminary six
months' premium was not acutally paid at that time,
but Walbridge then extended credit to Vogel therefor.
On February 11, 1922, this premium was paid by Mrs.
Vogel. In March, 1922, appellant caused to be duly
prepared and signed at its home office in New York
City, ready for delivery to Vogel, manifestly in com-
pliance with the application above noticed, two docu-
ments, plainly constituting two separate policies of in-
surance on the life of Vogel, though printed and writ-
ten on one sheet of paper, one a preliminary six
months' term policy covering the period from Decem-
ber 21, 1921, to June 21, 1922, at the low premium rate
stated in the above quoted application and receipt, the

other a regular policy effective June 21, 1922, containing several valuable options in favor of Vogel, at the much higher premium rate therein stated. The preliminary six months' term policy is evidenced by endorsement on the regular policy as follows:

"Term Insurance No. B2,879,487. In consideration of the payment in advance of a term premium of $9.28 The Equitable Life Assurance Society of the United States hereby assumes from this date until June 21st, 1922, (but no longer) the same liability to pay the sum of One Thousand Dollars in the event of death as is expressed and defined as commencing upon the last mentioned date in its regular policy No. B2,885,427 issued upon the life of John Leo Vogel, but this term insurance shall not participate in any of the privileges or benefits otherwise embodied in the said contract. This Term Insurance is preliminary to the insurance under the regular policy and is not in any event or to any extent concurrent therewith. New York, December 21st, 1921.        J. H. Keysers,
                    "Asst. Registrar."

This is a duly signed, stamped endorsement, manifestly not printed as a part of the printed form for the regular policy. In the regular policy, to become effective June 21, 1922, in so far as we need here notice its language, we read:

"Number B2,885,427.        Face Amount $1,000.

"The Equitable Life Insurance Society of the United States hereby insures the life of John Leo Vogel (herein called the insured) and agrees to pay at its Home Office in the City of New York One Thousand Dollars (the face of this policy) to his wife, Eleanor M. Vogel Beneficiary . . . upon receipt of due proof of the death of the Insured, provided premiums have been duly paid and this policy is then in force and is then surrendered properly released. . . . This insurance is granted in consideration of the payment in advance of Seventeen and 27/100 Dollars and the payment quarterly thereafter of a like sum upon each twenty-first day of September, December, March and

June, subject to the Conversion Provisions herein stated. . . . The Privileges and Conditions stated on the subsequent pages hereof form a part of this contract as fully as if recited at length over the signature hereto affixed. Executed this twenty-first day of June, 1922, at the Home Office of the Society in New York."

These policies, so evidenced on one sheet of paper, were, on March 24, 1922, sent by appellant by mail to its soliciting agent Walbridge for delivery to Vogel, and were by him delivered to Vogel about April 1, 1922. Just what agreement was then made between Vogel and Walbridge as to the payment of the first premium installment of $17.27 for that policy is not made plain other than that Walbridge, upon then delivering the policy to Vogel, extended to Vogel credit therefor. It is plain, however, that credit was then extended therefor without any definite time of payment being agreed upon.

Early in August, 1922, appellant sent, by mail, to Vogel a request for payment of the second quarterly premium installment maturing September 21, 1922. It is not plain as to whether this came to Vogel before his death or to Mrs. Vogel after his death. We may assume, in any event, that it left appellant's New York office before appellant received any notice of Vogel's death.

On August 2, 1922, Walbridge tendered to appellant and left at its Seattle collection office his check for $17.27 in payment of the first quarterly premium on the policy due on or before June 21, 1922. This check was later returned to Walbridge from appellant's Seattle office—just when or why is not shown; but apparently because of an intention on the part of appellant's agents there in charge to consider the regular policy as never having become effective for want of timely payment of the first premium installment.

On August 5, 1922, Vogel was accidentally killed, thus concededly rendering appellant liable to Mrs. Vogel upon the regular policy unless it was rendered ineffectual by reason of the failure of payment of the first premium installment. The jury returned, with its general verdict, special findings that no notice of the maturing of the first premium installment was given by appellant to Vogel prior to June 21, 1922, and no notice of any nature was ever given to him by appellant that there had been a failure of payment of the first premium, or that the policy had lapsed because of such failure. The evidence, we think, fully supports these special findings.

[1]  The principal contention here made in behalf of appellant, and the only one which seems to us to call for serious consideration, is that the trial court erred in refusing to decide, as a matter of law, that appellant is entitled to judgment absolving it from liability under the policy, as asked for by appellant's request for an instructed verdict and its motion for judgment notwithstanding the verdict. The argument is that appellant did not waive payment of the premium installment payable on or before June 21, 1922, at the inception of the term of the regular policy, and particularly that its soliciting agent Walbridge had no authority to waive such prepayment by the extension of credit therefor.

We think it has been made plain by the above summary of the facts that the insurance contract here sued upon, evidenced by the regular policy, is an entirely separate contract of insurance from the preliminary six months' term policy evidenced by the receipt of September 21, 1921, and the endorsement on the regular policy, both of which were delivered to Vogel about April 1, 1922. They are "not in any event or to any extent concurrent." Plainly, they evidenced two

separate liabilities on the part of the society, each not in the least dependent upon the other. Therefore, we have the question of waiver on the part of the society of payment in advance of the first premium installment on the regular policy, the one upon which recovery is sought in this action, and not a question of waiver of failure on the part of Vogel to pay subsequently maturing premium installments.

The right of an insurer to have its policy regarded as not becoming effective, because of want of timely payment of premium thereon at the beginning of the term, plainly is a right which the insurer may waive so as to effectually inaugurate the rights of the insured under the policy, though the policy, or application as part thereof, may expressly provide that it shall not become effective until the premium due at the beginning of the term has been paid. 37 C. J. 406; 2 May on Insurance, § 360; 1 Joyce on Insurance, § 86.

Such waiver may be evidenced by delivering or causing the policy to be delivered to the insured, which, under the authorities, is at least *prima facie* proof of payment or extension of credit for the premium due at the beginning of the term. In *Fenton v. Cascade Mutual Fire Ass'n*, 60 Wash. 389, 111 Pac. 343, Judge Dunbar, speaking for the court, said:

"The policy had been issued and delivered in accordance with the application. Under all authority it then became an executed contract, and under such circumstances, the presumption attaches that credit is given and time for payment extended. 19 Cyc. 606, and cases cited."

This was said in answer to the contention that the policy had not become effectual because the premium had not been paid when, apparently, by the terms of the policy the premium was payable at the beginning of the term. True, that was a fire policy, but the gen-

eral principle announced by the quoted language, we think, is applicable to our present inquiry. *Washoe Tool Mfg. Co. v. Insurance Co.*, 66 N. Y. 613; *Grier v. Mutual Life Ins. Co.*, 132 N. C. 542, 44 S. E. 28; *Cauthen v. Hartford Life Ins. Co.*, 80 S. C. 264, 61 S. E. 428; *Williams v. Empire Mut. Annuity & Life Ins. Co.*, 8 Ga. App. 303, 68 S. E. 1082; *John Hancock Mutual Life Ins. Co. v. Schlink*, 175 Ill. 284, 51 N. E. 795; *Terry v. Provident Fund Society of New York*, 13 Ind. App. 1, 41 N. E. 18; *Hartwig v. Aetna Life Ins. Co.*, 164 Wis. 20, 158 N. W. 280; *Loftis v. Pac. Mutual Life Ins. Co.*, 38 Utah 532, 114 Pac. 134; 37 C. J. 406; 2 May on Insurance 360A. This policy, it is true, does not in express terms acknowledge receipt of the first premium installment, but its language impliedly says such premium was paid upon delivery of the policy to Vogel.

Counsel for appellant rely upon the decision of this court in *Iles v. Mutual Reserve Life Ins. Co.*, 50 Wash. 49, 96 Pac. 522, 126 Am. St. 886, 18 L. R. A. (N. S.) 902. In that case, however, there was drawn in question a premium note delivered in payment of the first premium installment when the policy was delivered to the insured, which note became due some months later, the insurance contract expressly providing that insurance should lapse upon failure to pay the note. This, it seems to us, was in legal effect a failure to pay a premium installment maturing at a specified time after the policy became effective. It was not a question of a first premium installment the payment of which is *prima facie* evidenced by delivery of the policy to the insured.

[2] Such waiver may also be evidenced, at least in some substantial measure, by the assured giving notice to and making demand upon the insured for a premium installment maturing after the insurer may have acquired a right of forfeiture of the rights of the insured

because of default in payment of premium. *Beatty v. Mutual Reserve Fund Life Ass'n,* 75 Fed. 65. It is true in that case it was a periodical assessment levied against the insured which was drawn in question, rather than a fixed premium, but we fail to see wherein the demand for such an assessment would be materially different from a demand for a maturing premium installment fixed in amount, in so far as such demand would evidence waiver of the forfeiture rights of the insurer rested upon prior default in payment of premium.

[3] Was the apparent authority of Walbridge as agent of appellant such as to warrant the jury in finding, as they did in effect, that appellant authorized Walbridge to waive payment of the first premium installment at the commencement of the term? It seems to us that the jury were warranted by the evidence in so concluding, in view of the possession by Walbridge of the policy for the manifest purpose of its delivery to Vogel, and the other attending circumstances.

We conclude that the trial court did not err in refusing to withdraw the case from the jury and decide, as a matter of law, that appellant should be absolved from liability under this policy. Other claims of error, we think, are without substantial merit. The law, as we have above noticed it, disposes of most of these claims.

The judgment is affirmed.

ASKREN, MITCHELL, TOLMAN, and FRENCH, JJ., concur.