# MIDLAND LOAN FINANCE COMPANY v. SECURITY INSURANCE COMPANY OF NEW HAVEN, CONNECTICUT.[1]

July 19, 1940.

No. 32,430.

[1]Reported in 293 N. W. 313.

*Brill & Maslon* and *Maurice L. Grossman,* for appellant.
*Freeman & King* and *Arthur B. Geer,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order denying plaintiff's motion for amended findings of fact and conclusions of law or for a new trial.

From a stipulation forming the important part of the record now before us, a sufficient outline of the factual background for this appeal can be gathered. Plaintiff, a Minnesota corporation, engaged principally in buying conditional sales contracts from automobile dealers in and near the Twin Cities, obtained from the Thornton Motor Company of St. Paul on or about the 29th day of January, 1937, the vendor's interest in a conditional sales contract whereunder a Chrysler automobile had been sold by the motor company to George Fyten for a total price of $1,190.05. According to the terms of this contract, a down payment of $30 was made; a trade in credit in the amount of $378.05 was allowed; there remained a balance of $782, which was to be paid commencing on the 29th day of February, 1937, in 11 monthly installments of $35 each and one installment of $397. The conditional sales contract and the assignment of the vendor's interest therein to plaintiff were duly and properly recorded.

By the terms of an "open policy" of insurance, with attached endorsement issued to plaintiff on July 17 of the previous year and a certificate of insurance made subject to the terms of the "open policy" and issued on the same day that the car herein involved was sold, defendant insured plaintiff and Fyten against "direct loss or damage * * * to the automobile" from specified perils, including theft and

collision and/or upset, in an amount not exceeding the sum of $700 less a deduction of $50. Fyten, without the consent or knowledge of plaintiff, sold and delivered the automobile to one Ben Goldberg, a resident of Texas, who drove the car to his native state and there procured a policy of collision insurance on the vehicle with the Concordia Fire Insurance Company of Milwaukee. Thereafter and on or about the 17th day of February, 1937 (at a time when there was $782 still due under the contract), the automobile was involved in a collision and/or upset within the meaning of the "open policy" causing direct loss or damage to the car in the amount of $832.50. The wreckage was worth $100.

Goldberg duly made claim upon the Concordia Fire Insurance Company for the loss thus sustained. He was paid the sum of $832.50 and was permitted to keep the salvage of the car, which he sold for the sum of $100 to a garage in the state of Texas which rebuilt the automobile and then sold the car to one J. R. Pritchard, who in turn sold it to one Roy Hutchins, a resident of the state of Texas. In the meantime, Fyten continued to make monthly payments to plaintiff totaling $245 on the contract. He became delinquent on or about October 29, 1937, and plaintiff, endeavoring to repossess the automobile because of this delinquency, then learned of the absence of the car from the state and thereupon made a claim under the theft provision contained in the policy. Later, and immediately after ascertaining the existence of the foregoing facts, plaintiff revised its claim so as to bring it under the collision provisions of the policy. Defendant does not assert any irregularity in the form or as to the time in which these claims were presented to it. It did, however, deny liability.

Plaintiff instituted this action to recover its loss under the collision or upset provisions of the above mentioned insurance policy and also to recover expenses incurred by it in discovering the facts which culminated in the claim. Upon issues being joined, the case was tried before a court

without a jury, and findings of fact and conclusions of law adverse to plaintiff were made. This appeal followed.

■ The principal question to be decided is whether the plaintiff, under the facts stated, has sustained direct loss or damage within the meaning of its automobile collision policy. Respondent has cited several cases in support of the rule that an insurer is not liable for theft or destruction of property under policies insuring against such contingencies where the property has been restored to the owner or repaired by others prior to the payment of loss. Frost v. Heath, 211 Ill. App. 454, 460; Federal Ins. Co. v. Hiter, 164 Ky. 743, 176 S. W. 210, L. R. A. 1915E, 575; Kansas City Regal Auto. Co. v. Old Colony Ins. Co. 196 Mo. App. 255, 256, 195 S. W. 579; Callahan v. London & Lancashire F. Ins. Co. Ltd. 98 Misc. 589, 593, 163 N. Y. S. 322; Mathewson v. Western Assur. Co. 10 L. C. Rep. 8; Huey & Philp v. Ewell, 22 Tex. Civ. App. 638, 55 S. W. 606; Ramsdell v. Insurance Co. of N. A. 197 Wis. 136, 221 N. W. 654.

Numerous and more convincing authorities to the contrary referring to damaged property have been called to our attention by appellant. Savarese v. Ohio Farmers Ins. Co. 260 N. Y. 45, 182 N. E. 665, 91 A. L. R. 1341; Aetna Ins. Co. v. Baker, 71 Ind. 102; Pink v. Smith, 281 Mich. 107, 274 N. W. 727; Foster v. Equitable Mut. F. Ins. Co. 2 Gray (Mass.) 216; Old Colony Coöp. Bank v. Yorkshire Ins. Co. 53 R. I. 439, 167 A. 111; Meader v. Farmers' Mut. F. Relief Assn. 137 Or. 111, 1 P. (2d) 138. See also First Nat. Bank v. National Liberty Ins. Co. 156 Minn. 1, 194 N. W. 6, 38 A. L. R. 380; Sargent v. Firemen's Ins. Co. 89 N. H. 171, 195 A. 346; Remedial System of Loaning v. New Hampshire F. Ins. Co. 227 Ky. 652, 13 S. W. (2d) 1005; Evans v. C. M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335; Roth v. Chatlos, 97 Conn. 282, 116 A. 332, 22 A. L. R. 1554.

We need not add to these divergent views. The important and determinative factor which distinguishes the case

now before us from those cited is that here the loss to plaintiff caused by reason of the collision has not been restored. True, the automobile was rebuilt. But this improvement of the vehicle did not and cannot benefit plaintiff for two reasons: (1) The trial court found (and this finding is not disputed) :

"That under the law of the state of Texas the interest of a *bona fide* purchaser of an automobile within said state of Texas is superior to the interest of the owner of a mortgage or conditional sales contract lien or title in a foreign state, although said mortgage or conditional sales contract was properly recorded and filed in said foreign state."

From the stipulated facts it appears that the garage which purchased the salvage of the automobile from Goldberg within the state of Texas was a *bona fide* purchaser. This sale cut off plaintiff's interest in the wreckage of the car; hence it cannot be said that its loss at the time of the collision was restored by improvements to the car made by one who was the absolute owner thereof at the time the improvements were made; and (2) apart from this feature of the laws of Texas, it is a general rule of law, based upon principles of justice and equity, that an owner of personal property cannot appropriate the improvements made thereto by a stranger acting in good faith. See 1 Am. Jur., Accession, and particularly §§ 21 and 30; see also cases collected in 2 Fraser, Cases and Readings on Property, c. 9, where the following note appears at p. 423:

"Defendant bought at a U. S. government auction as junk the skeleton of an automobile. The car in good condition had been stolen from plaintiff a year before. Defendant paid $85 which was the market value at the time. He constructed a delivery truck at an expense of $800. In suit for possession or value, it was held that plaintiff could recover only $85. Ochoa v. Rogers, 234 S. W. 693 (Tex. Civ. App., 1921)."

Our conclusion is that plaintiff suffered a loss at the time of the collision against which defendant, by its policy, had insured it, and that the right of action which then accrued was not lost although a third party, by acts not inuring to the benefit of plaintiff, restored the vehicle to its condition prior to the time of the accident.

■ Ordinarily the phrase "as their respective interest may appear" refers to the interests of the insured parties at the time of the loss. Fenton v. Cascade Mut. F. Assn. 60 Wash. 389, 111 P. 343; Eagle Star & British Dominions v. Tad-lock (D. C.) 22 F. Supp. 545, 547; Atlas Reduction Co. v. New Zealand Ins. Co. (8 Cir.) 138 F. 497, 9 L. R. A. (N. S.) 433. Applying the rule referred to, plaintiff would be entitled to the limits of the policy as the loss caused by the collision exceeded these limits. But here an additional factor enters into the case. Subsequent to the date of the collision and prior to the time plaintiff learned of it and asserted a claim for its loss, Fyten, the vendee under the original conditional sales contract, made payments thereunder to plaintiff aggregating the sum of $245, thereby reducing the amount due under the contract to the sum of $537. At the trial the parties stipulated as follows:

"In the event the court finds for the plaintiff the parties are not in accord as to the exact measure of damages to be awarded; the following facts are not disputed:

"(a) That as set forth in paragraph X, immediately preceding the accident, the said automobile was of the reasonable market value of at least $932.50; that immediately thereafter said accident and collision, said automobile was of the reasonable market value of $100, and that the extent of repairs necessary to put said automobile in the condition in which it was prior to said collision amounted to $832.50.

"(b) That under the provisions of Exhibits B and C, the limit of liability placed upon the defendant company

upon collision or upset as defined therein was $700.00, subject to a deduction of $50.00.

"(c)   That under the terms and provisions of Exhibit A, the first payment due under the terms of said conditional sales contract to the plaintiff herein was the 29th day of February, 1937; that at the time of the accident, the first payment on said conditional sales contract had not been paid, and the amount due thereunder to the plaintiff was $782.00; that as set forth hereinabove, said George Fyten sold said automobile to said Ben Goldberg before the first payment became due.

"(d)   That thereafter, said George Fyten paid to the plaintiff seven installments due under the terms of said conditional sales contract, or a total of $245.00, and at the time of presenting its claim to the defendant for payment under the collision provisions of Exhibits B and C, the amount due the plaintiff under said conditional sales contract was the sum of $537.00."

Based on the provisions of the stipulation, the court, among other things, found that when plaintiff purchased the contract in question on or about January 29, 1937, there was an unpaid balance thereon of $782.00; that "after purchasing said automobile, the said George Fyten paid to the plaintiff seven installments due under the terms of said conditional sales contract, or a total of $245.00, and has been delinquent on said conditional sales contract since the October 29, 1937, payment." Absent the stipulation of the parties as to the payments made by Fyten subsequent to the date of the loss, and the finding of the court based thereon, plaintiff would be entitled to recover the entire amount of the loss, less the sum deductible under the terms of the policy. But, having stipulated that payments on the contract aggregating $245 were made by Fyten after the loss and that the balance due plaintiff at the time of the trial was $537, plain equity and justice would prevent recovery of a sum greater than that amount, less $50 deductible under the policy, and interest

from the date the same became payable.

We are not here concerned with the rights of Fyten, if any he has. The sum paid by him to plaintiff was on a written obligation which he owed plaintiff. The payments merely reduced the amount of the obligation. The question as to whether Fyten has a claim against defendant is not before us. He is not a party to this action.

■ Plaintiff claims to have expended the sum of $280 in ascertaining the true facts with respect to the absence of the automobile from this state and the circumstances concerning the collision in which it was involved. This claim is premised upon the following provision of the insurance policy:

"In the event of loss or damage and whenever requested by this Company, the assured shall assist in the recovery of property insured hereunder either by means of replevin proceedings or otherwise, in effecting settlement, securing evidence, obtaining the attendance of witnesses and prosecuting suits to such an extent and in such a manner as is deemed desirable by this Company, and this Company shall reimburse the Assured for any expense incurred at its request."

The only testimony by which plaintiff sought to show that it was entitled to reimbursement under this provision of the policy was that of Herman Schleiff, president of the Midway Loan Finance Company, who related the details of an investigation made by him. There was a failure on the part of plaintiff to show that this expense was incurred at the request of defendant, and consequently plaintiff is not entitled to reimbursement therefor.

The order denying plaintiff's motion for amended findings of fact and conclusions of law or for a new trial is reversed, and the trial court is directed to amend its decision in accordance herewith.

Reversed.